All right, Mr. Strelka, we're pleased to hear from you sir. Yes, may it please the court. Thank you for your patience My name is Tommy Strelka from Virginia Employment Law. I'm here on behalf of the appellant Clay Fitzgerald Whose case under the Age Discrimination and Employment Act was dismissed on summary judgment in the Western District of Virginia I've been in front of all of y'all judges before it's good to see you again I'll state that in about 20 years of employment law This case is not ultimately legally complicated. It does have some facts and It's our contention that the court and on a de novo review here today that the trial court misinterpreted those facts and This is a retaliation case This is not an age Discrimination case. This is one count of Retaliation based upon protected activities Not protected classes. This is an individual battalion chief. Mr. Fitzgerald Who had made repeated protected activities as undisputed under the Age Act throughout the years that he was there the most recent was July of 2017 a In August of 2017 The county administrator his name is spelled Gary Leroux, but it's pronounced Leroux Mr. Leroux gave him directed that he'd be disciplined at that time Thereafter He was terminated in May of 2018 and the parties Along with the court seemed to agree that you know that if you want to put a Alleged but for reason for why he was terminated. It was this issue with the purchase and procurement of a brush truck a brush truck is a off wheel Off-road capable vehicle. It looks like a pickup truck with fire suppressant tech mounted on the back It's not as big as a fire truck as a full-size fire truck But it's something in Botetourt County. You can drive over the the fields in the ground to put out brush fires That's the whole point of it Mr. Fitzgerald the appellant had been directed previously by Gary Leroux That he was not to be involved in Ambulance purchases. That's a 259 in the record. His previous job was as a salesman for an ambulance company. Sure Kind of suggests it might be a little conflict Him to be purchasing Brush trucks from Given his previous employment Well with all due respect your honor brush truck is not an ambulance. What a brush truck is not an ambulance The it was I believe it's in the record the company from which that this was procured was not the company that mr Fitzgerald had worked for and He had worked on other procurements of other vehicles non ambulance related in the past The evidence also shows that this particular brush truck which was identified for a volunteer fire department by the name of Glenn Wilton Had been set in pace by chief Brit This was something that the chief at the time had done the heavy lifting to get the ball rolling on this Procurement he had made there are communications in the record where he had discussed specifications. He picked the Ford chassis and Requirement about authorization as a Just a mere formality or something. They're not Really all that in all that important well the Because you didn't have any written authorization But he doesn't need it not under the policy. No, but are you well it perhaps but you seem to make light of the Authorization requirement that it wasn't that big a deal. I don't make a lot of it your honor This was something that well first the court needs to recognize. I think this is important chief Brit left he resigned in late November and This procurement was set in motion by him before he left and then on November 20th Gary LaRue has a meeting with The pellant in which he states that the volunteer fire departments are to be taken care of We need to support them Can I ask a framework question? I know you said this is mostly a fact case and that might be right but a framework question Hypothetically If I disagreed with you and I thought the policy required express written authorization Notarized and like filed with a court whatever something crazy, right? But it required that and he didn't do it, right? So if he was required to get authorization and he didn't do it as I understand your argument that resolves the case right that that would in that scenario from your perspective There might have been other arguments, but that your argument would fall then correct And and so we really just fundamentally are called to decide that question. That's absolutely right Not not some other if he was required to get approval that there are some other thing going on It's that question in the light most favorable to the appellant. No. No, I totally understand that but that they're not another issue It's just that's the fundamental question. It's an ad authority Okay. So what about if I were to find? That he Did not need authority But the fire department reasonably believed that he did so they were reasonable Even if mistaken in believing that he was required to get it. I'm not saying I get there on these back I like that. I like the thought I Because we often say that I can poke holes in it though, right the we often say that you know if I fire somebody because I believe that they stole money and it turns out like Forensics later reveal that I was wrong Right, that's not pretext right because because I believe that you stole the money And really right so if as long as that belief was reasonable We would Affirm that sort of legitimate reason for firing. And so does the same idea apply here? Yeah, if hypothetically Based on these facts. I found that the fire department Reasonably, but as it turns out incorrectly Believe that the policy required authorization. How could it be reasonable when they feign surprise? Don't fight. Don't fight the hypothetical. I'm asking the legal question This is a factually I'm saying except as a premise that I made that fine I'm I'm not making either of these fine. I want to understand the legal framework. Sure. Sure your honor I'll go out with you right where you are. Okay, if this court were to believe Despite the evidence. I'm about to talk about. Yeah that this administration this this County Was justifiable in their belief that it was reasonable That he did not have authority and he was off running and gunning for the first time in his 30-year fireman career. Yep You're right. You're right. Then it's a justifiable and then we can't prove pretext. It's gone. Okay, you're right I wanted to understand your argument. Yeah, I'm happy to hear from you on the facts Yeah, I just want to understand what the framework we've got to fit in right was the facts are that there's multiple communications between the deputy chief Ferguson Susan tincture Gary LaRue all of these Individuals in the months leading up to his termination and at that time They clutched their pearls and they feigned great surprise this completely unaware purchase has somehow fallen into the Glen Wilton parking lot How did this occur? How did it occur? You were copied? Oh, can I can I ask you a follow-up questions at the framework? Mm-hmm. I had thought maybe you were going to say the district courts framework was wrong That the question is not whether he was authorized to buy the truck But you seem to have now agreed with judge Richardson, that's that doesn't solve it You have to show that they didn't actually have that reason That wasn't actually spring but also that the real reason was retaliation So, can you tell me what's your best evidence that the real reason was retaliate? Right because if we can prove pretext if we can prove the question is whether defendant had a legitimate Non-discriminatory reason to terminate plaintiff if we can prove that that reason that they have cited the purchase with the brush truck is Non-legitimate then we have proven pretext and that then the case has Satisfied the prima facie elements of retaliation and we are The case must be reversed Question I don't see I didn't see in this record the idea that the real reason was Retaliation, I just thought that there was that the record indicates that there was a big kerfuffle over Authorization and the like but sure The Policy is clear that authorization Is required and you can understand The policy the county's concern about that because They really don't want a whole lot of people running around Exercising purchasing responsibility He says he can do it another employee says they can do it another employee says they can do it pretty soon the policy was in shreds and As I read the Record of the the Whether they were right or wrong. They were concerned about Employees Purchasing making substantial purchases without authorization. I mean that your honor. You're I think you're assuming that's what they have said but that's not what the evidence says, but the I Didn't see anything follow up on what Judge rushing said I didn't see anything to Indicate that this was a retaliation. Sure Here this is a individual who made repeated protected activities over the years up into 2017 when this most recent he's received discipline from Gary LaRue the next month the decision-maker was also Gary LaRue that would That's pretty much of a double-edged sword, right? He doesn't have any disciplinary actions. He doesn't have a history of work performance issues counsel Proceed Sorry, your honor the evidence in the in the record of this case is this is a firefighter with years of excellent work performance And this is a firefighter who made protected activities under the law Specifically to the decision-maker who made the decision to terminate him He made a protected activity under the law one month later that decision-maker chose to discipline him for it Which we the court has as indicated that the other issues were questions of fact Said these activities Occurred over a number of years. Yes, your honor and yet and there was no action taken over a number of years Despite there was that no there wasn't any did not the action the adverse action that you complained at the record indicates that the company was concerned with its policy and this is This is we're talking about $40,000 purchase Without authorization and with without whether the the company believes with whether rightly or wrongly it was without authorization and that leads to a chaotic situation within the workplace if other people are making substantial outlays of Federal funds, I mean of county funds without kind of without any kind of Authorization it just There's every reason in the world for the county to be concerned about what's going on chief Brit authorized the sale It's not a fantastical concern chief Brit procured the sale of the truck your honor The appellant followed through on that section 102 of the purchasing policy provides that the administration may quote Delegate the purchasing responsibility to a responsible subordinate in his testimony Gary LaRue said that the purchase of a vehicle would be up to chief Brit and those lower than him on the chain of command all of that sets into play that The appellant in this case was authorized to make this purchase he had never been told no and the Individuals who were aware of this the entire way through including Ferguson the documents in the case Their names are all over this they feign surprise Yes He'd been told to take care of the voluntary departments. He'd been told by chief Brit He had he was copied on the emails from chief Brit in which chief Brit is picking the vehicle specifications Susan tincture is the purchasing agent under section 1.2. She signed the purchasing order. She authorized it Chief the appellant did his job your honor. That's all he ever did is that it's this is an individual who made repeated protected complaints and The Gary LaRue seized upon it and used this to terminate him He did not have an adverse employment action prior to this But in the record of the case is replete with instances of him getting disfavorable Positions not been able to ride the truck ride the engine as it were there was a number of issues that were cited by the plaintiff in which it was Leading to try to make him quit try to get him to out of this fire department because of his protected activities And so this situation was was leapt upon by the Apple II to wrongfully fire And in the facts do not justify it Thank you We have no questions Mr. Gwynn Afternoon your honor May it please the court. My name is Jim Gwynn. I'm here on behalf of Botetourt County May we all be discriminated as much against as Mr. Fitzgerald was He was promoted in his from he started at a rather low level all the way to battalion chief in 2017 Gary LaRue who's accused of all these Employment atrocities by the by the plaintiff promoted him to bat battalion chief. Your honor. Is there any evidence that LaRue? in April of 17 when he pushed for his promotion that LaRue knew of The plaintiffs Complaints about age discrimination the He I think he knew about the one in 2017 your honor. I know that he addressed that known about that because I'm asking about in April of 2017, right? That's when the plaintiff was promoted Yeah, he was promoted by LaRue right or he was in LaRue was involved in his promotion, right? in June of 2017 The plaintiff complains about discrimination so he couldn't have known about that one yet because it hadn't occurred correct, right? What I'm asking is is there any reason to think that LaRue when he pushed for promotion? That he knew about any of the plaintiffs prior complaints, right? Because we know there are old complaints that were made Right. And so what I'm asking is is there any reason to think that LaRue knew of those things? There hasn't been any evidence that your honor he was not the county administrator at the time as a guy So why is it relevant to consider whether LaRue appointed or promoted the plaintiff? at a time when he did not know about age complaints and then allegedly retaliated after The first time he became aware of age complaints in June of 2017 because so those things have now changed The theory would be he liked him when he wasn't a complainer, right? He complains in June of 17 and by August of 17 He's back to he's he's flipped on him and he now is discriminating against him or retaliating more more precisely It's the application your honor of the of the proud case and that is that he was hired by Botetourt County He was over 40. So he was already in a protected class There is according to that decision and according to this clearly fair if he's over 40, right because that's something he can't change Right, but but that's a discrimination case, right? So you're black or you're not black, right? You're old or you're not old Right, and so that run that thread runs through but here when he was promoted the promoter Mr. LaRue Didn't know he was a complainer Right, but he knew his age Which we don't have a discrimination case here, right? We have a retaliation case. I think that I think it applies in a retaliation case From the standpoint of how you analyze whether or not there was a discriminatory intent at the time Which I think was judge rushing's question about whether or not there's a discriminatory intent at the time that he was terminated But the point here is that the presumption you're relying on is a presumption that makes sense in a Immutable characteristics case, right? It's hard to it's hard to see how Someone could be accused of being Biased against a certain ethnicity if they hired a person of that ethnicity, but that same presumption doesn't carry over when I Hire someone not knowing that they are in the future going to make Complaints, but then I fire them later because I don't like the fact that they make complaints Do you see the point here that that presumption? Proud but it doesn't make sense in retaliation I could just get judge rushing to explain my thoughts more often. I would be so much better off I think they call it woman's In From that standpoint the evidence in this case clearly shows though that he had that that mr Fitzgerald was not approved and not been authorized to engage in this transaction on November 22nd of 2017 he sent an email saying that all we needs to go ahead He clearly knew at that time that he didn't have the go-ahead He then on December 8th of 2017 you agree with your colleague do you agree with the framework we have here that if you your client correctly or reasonably believed That approval was required then He seems to agree he can't show pretext That might not be true in every case. But in this case that that's the framework. We're operating under. Yes, your honor I mean that it's clearly the case That That that that was a motivating factor from the standpoint of mr LaRue was that in addition to some other instances that he was unhappy with that the main one and I think that And I understand why mr. Fitzgerald trying to downplay this one but the main one was the fact that he made a thirty seven thousand five hundred dollar purchase without authorization and As just judge Wilkinson said in a county where you have to count to the public For your spending Record is replete with evidence that this this policy mattered to the company they have a Policy the policy is not ambiguous. It's it's it's It's set out the authorization requirement is not ambiguous It's set forth The all sorts of evidence of concern about unauthorized purchases every county and every local government that I know of wants to keep some kind of control over its finances and over its financial records and They're just not This is actually central to local governments That there be no question about unauthorized purchases because you can get in deep trouble in a real hurry if you if employees Get the idea that No particular Authorization is required and you do away with bidding and you allow all sorts of friends and neighbors purchases and you all have all sorts of Individuals making purchases with kickbacks and the right it's just fundamental to the integrity of local government that they keep them that they keep control of this and The record indicates that's what was on their minds And I would submit your honor that that comes from the top down from the Commonwealth that the Virginia Public Procurement Act Demands that there be this plan and policy in place and in our policy We specifically say that the county administrator is designated the purchasing agent and shall serve as the principal public purchasing official for the county And that it involves all purchases So he is respond. He she is responsible for all Newspapers are full of Articles about people having unauthorized purchases and compromise bidding practices and and And under the table Contracting and all the rest and as I said, I have never Seen or read about a local government. It wasn't really Sensitive and concerned about the problem of unauthorized purchases And And if the policy were ambiguous that might be one thing if there was no such policy there might be another thing but you know, they $40,000 going out the window without authorization that's You know That's not pocket change. No Not in a place like Bonita You know, we're not talking about Chief Britt had the authority to make the purchase right so that the policy allows the county administrator to delegate authority And there seems to be some evidence in the record that the the chief had that authority to make small purchases Which is defined as less than $50,000 as I understand it So before I understand he wasn't there anymore, but before he left Do you think he could have approved this purchase? No, your honor. I think what he would have done He had not been authorized to make it. I think what he would have done is He would have gone and reported to the county administrator and said, okay, we've looked at the three different types of trucks I've run it by the Glen Wilton chief the Glen Wilton chief agrees with me The Ford is the one we want we'd like to get the Ford and at that point the county minister County administrator would say go get the Ford and then he would be authorized by it and that's how that would work So it in your view in the county it Approval only happens on the on the back end, right? The last step is approval It's not on the front end when the administrator says, all right This particular station house needs a bus truck go get it Exactly because we don't know what it costs at the front end and we're just simply not going to give people that carte blanche to go out and spend the county's money But we have to know what the cat what the expense is before we're going to do it it was in the budget we had to make sure that it met the budget and The fact that it's in the budget doesn't mean that it necessarily is going to get spent or when it's going to be spent And they're going to be times again in a county the size of Ottetot where Maybe this month we don't want to spend it A month or two and we'll spend the thirty seven thousand five hundred next month because of another expense that we've got coming up So there are a number of different things that go on there I'm confident that this is not the way it works in places like Loudon or Arlington or Fairfax counties from a purchasing standpoint. I don't think that the that the county administrator there is as concerned with thirty thousand dollars or forty thousand dollars as the county administrator is in Bottetot, but at the same time they both share the same ethical and Good government concern to make sure that only authorized purchases are made and and under these circumstances Mr. Fitzgerald admitted as much in November when he said as soon as the go-ahead is given he didn't have it He knew he didn't have it We don't know what possessed him to go and buy the truck but To now say as as they argue that that the county is feigning surprise Well, yeah, they were all surprised. They knew that there was a budget, you know truck in the budget They knew they were going to get a truck But they were really surprised the day it showed up because they hadn't authorized anybody to buy it yet So yes That particular part of it They were surprised about not the fact that by the you know sometime in that fiscal year that there was going to be a brush truck there, but rather the fact that it showed up the day it showed up when nobody had signed any authorization and nobody had signed to go ahead for It and that's the whole key to this is the the evidence and what frankly motivated the district court judge was Right magistrate judge at the time now district court judge Was that email where he said we need to go ahead and then he couldn't produce a single shred of evidence and still has not That he had to go ahead which was essentially the authorization and so I would submit To the court that under these circumstances that they failed to show pretext because the county had either They knew that he had not had approval or they reasonably believed it and it was not something that was Picky youn or anything else. I mean the bottom line is this is a very very important Component to the way the county operates from a financial standpoint If there aren't if there aren't any other questions Thank Yes, thank you your honor so in this case the appellant testified In the record. I just had it up here. And of course as I move from my station up to here, I lost it Regarding his communications with Chief Deputy Ferguson who was above The appellant in the chain of command there were several points during this process via email and in person I asked Chief Ferguson to confirm the funds were there to complete the purchase with those budget lines And if there was anything I was missing as he has the better working knowledge of the administrative side of things than the rest of us this was an individual who went to his supervisor at the time and Discussed over email and in person the procurement of this truck and this supervisor Signed off on it. The supervisor also never made a protected activity under the age statute Supervisor is still employed Susan tincture also signed off on this Susan tincture never made a protected activity under the age statute She is still employed the evidence in the case is that Chief Britt Authorized this as the appellant testified he said that This was something Britt put in motion and the bid process was done by him through purchasing before he left The funds came from the non-spent DFP money I inherited the project that was already in motion along with another generator that was already to be purchased when I became their contact This was That was in an email that the plaintiff had sent to Gary LaRue prior to his termination The evidence is is that the individuals involved? Perhaps through their own neglect or negligence and not being on top of every communication after a chief of the fire department resigned That's an easy explanation Okay, but at the end of the day, they were still copied on absolutely everything They had noticed that this purchase was actually happening and all of those individuals who also signed off on it Who never said no who over six months of working with him to get the brush truck. They were not fired So with that I thank you all for your time. It's been a long day. Y'all have been here all morning I appreciate the time you've given to this case. I do do you have any other questions? I'd be happy to answer them All right, sir, we thank you Thank you, thank you Thank you both. We will come up and we'll adjourn court and come on up and shake hands Or they'll come down and shake hands and then come on up This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court
judges: J. Harvie Wilkinson III, Julius N. Richardson, Allison J. Rushing